Alexander **BRODY**, Plaintiff,

v.

**STATE OF NORTH CAROLINA,
Defendant.**

**No. 81–121–CIV–7A.**

United States District Court,
E.D. North Carolina,
Wilmington Division.

Jan. 11, 1983.

Stuart V. Carter, Wilmington, N.C., for plaintiff.

John F. Crossley, Wilmington, N.C., for defendant.

## ORDER

BRITT, District Judge.

Plaintiff, a seaman employed upon the vessel, BUXTON II, brought this suit against the State of North Carolina, as owner and operator, pursuant to the Jones Act, 46 U.S.C. § 688, and under the doctrine of seaworthiness, claiming damages sustained by him aboard the vessel. Thus, the general admiralty and maritime jurisdiction of the court is invoked. *See* 28 U.S.C. § 1333. In answering, the State moved to dismiss the action, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, as being barred by the eleventh amendment of the Constitution of the United States and by state sovereign immunity. Because matters outside the pleadings have been presented and considered by the Court, the Court will treat defendant's motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b), 56. In adopting the memorandum and recommendation of Magistrate Charles K. McCotter, Jr., filed on 8

April 1982, the Court directed the parties to file additional briefs, memoranda and affidavits on the question of whether defendant's activity is a governmental or proprietary function. *See Brody v. State of North Carolina,* No. 81–121–CIV–7A (E.D.N.C. 13 April 1982) (order adopting memorandum and recommendation).

As Magistrate McCotter discussed in his memorandum and recommendation, the question in this case concerns whether the State of North Carolina, in operation of a public ferry system, upon navigable coastal and intercoastal waters within its territory, has consented by constructive waiver to suit against it in federal court. It has been established that a state may consent to suit against it in federal court by waiving its eleventh amendment immunity. *Parden v. Terminal Railway Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Petty v. Tennessee-Missouri Commission,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). In this case, the Jones Act cause of action is created by Congress and comes within the legitimate regulatory power of Congress. The unseaworthiness cause of action is a general maritime law claim. *See Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The Jones Act extends to seamen the remedies made available to railroad workers under the FELA. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 546–47, 80 S.Ct. 926, 931, 4 L.Ed.2d 941 (1960); *Public Administrator of City of New York v. Angela Compania,* 592 F.2d 58, 61 (2d Cir.1979), *cert. dismissed,* 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979).

In *Parden,* the Supreme Court stated that where "a State's claim of immunity against suit by an individual meets a suit brought upon a cause of action expressly created by Congress," two questions are thus presented: "(1) Did Congress in enacting the FELA intend to subject a state to suit in these circumstances? (2) Did it have the power to do so, as against the State's claim of immunity?" 377 U.S. at 187, 84 S.Ct. at 1210. A third question that the Court ad-

dressed in *Parden* is whether a state consents to be sued when it "leaves the sphere that is exclusively its own and enters into activities subject to congressional regulation." *Id.* at 196, 84 S.Ct. at 1215. In *Parden,* the State of Alabama owned and operated an interstate railroad and was sued by its employees for damages under the Federal Employers' Liability Act (FELA). *See* 45 U.S.C. §§ 51–60. The Supreme Court, after finding that the State of Alabama had "ventur[ed] into the congressional realm," held that the State had consented to be sued as authorized by the FELA. 377 U.S. at 196, 84 S.Ct. at 1215. *Parden* is directly applicable to the Jones Act, because Congress incorporated the principles and remedies of FELA into the Jones Act. *See* 46 U.S.C. § 688 ("in such action all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply").

▆▆▆▆ The admiralty and maritime powers of Congress are exclusive. *See Panama Railroad Co. v. Johnson,* 264 U.S. 375, 386, 44 S.Ct. 391, 393, 68 L.Ed. 748 (1924); *Knickerbocker Ice Co. v. Stewart,* 253 U.S. 149, 160, 40 S.Ct. 438, 440, 64 L.Ed. 834 (1920). Therefore, Congress had the power to subject a state to suit under the Jones Act. *See In Re Holoholo,* 512 F.Supp. 889, 899, 904 (D.Hawaii 1981); *Huckins v. Board of Regents of the University of Michigan,* 263 F.Supp. 622, 623 (E.D.Mich.1967); *Cocherl v. Alaska,* 246 F.Supp. 328, 330 (D.Alaska 1965). *Contra Welch v. State Department of Highways and Public Transportation,* 533 F.Supp. 403, 406 (S.D.Tex. 1982).

▆▆ Second, by enacting the Jones Act, Congress demonstrated its intention to abrogate a state's eleventh amendment immunity. *See Id.* In *Parden,* the Supreme Court stated: "We think that Congress, in making FELA applicable to 'every' common carrier by railroad in interstate commerce, meant what it said. That congressional statutes regulating railroads in interstate commerce apply to such railroads whether they are state owned or privately owned is

hardly a novel proposition. . . ." *Parden v. Terminal Railway Co.,* 377 U.S. at 187–88, 84 S.Ct. at 1210 (footnote omitted). Because Congress, by incorporating FELA into the Jones Act, intended to apply the Jones Act to all employers of seamen, there is no reason to treat employers under the Jones Act and FELA differently. *In Re Holoholo,* 512 F.Supp. at 904.

The third and final step required to establish constructive waiver of eleventh amendment immunity by a state is that the state must be considered to have consented to be sued by entering into the relevant federally regulated area. Clearly, the state ferry system operates on intercoastal and navigable waters. The State of North Carolina employs persons to operate these ferries. Moreover, the Jones Act was originally enacted in 1915. The North Carolina Department of Transportation was given authority to provide for the establishment of ferries by statute in 1927 with subsequent statutory amendments. Therefore, the North Carolina General Assembly must have been aware that it was entering into an area of federal regulation governed by the Jones Act. *See Parden v. Terminal Railway,* 377 U.S. at 192, 84 S.Ct. at 1212–13.

The Court is aware that the Supreme Court's decision in *Employees of Missouri Dept. of Public Health and Welfare v. Missouri Department of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), has been used to distinguish the result in *Parden* on the basis of operation "for profit" and of governmental versus proprietary functions. *Id.* at 284, 93 S.Ct. at 1617. However, this Court and the Court of Appeals for the Fourth Circuit, after considering the eleventh amendment issue on previous occasions, have found that *Employees* was not "controlling authority." *See International Longshoremen's Association v. North Carolina State Ports Authority,* 370 F.Supp. 33, 38 (E.D.N.C.1974), *adopted as op. on appeal* 511 F.2d 1007 (4th Cir.1975).

As in *Longshoremen's Association,* the State alleges that the ferry system does not

operate with a profit motive, but instead lost money for the fiscal year 1981 to 1982. *See* Affidavit of W.P. Garriss, 29 Sept. 1982 ("receipts for the Ferry Division of the Department of Transportation were $889,-113.00; total expenditures were $8,701,-261.46"). In addition, the State alleges that the ferry system is part of the North Carolina highway system and is, therefore, a governmental function. But in *Longshoremen's Association,* this Court held and the Fourth Circuit affirmed that the State was not immune from suit under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.,* by virtue of the eleventh amendment. In that case, the State Ports Authority was operating a railroad. Chief Judge Butler found that: "No revenues have been generated from the operation of the railroads. They are subsidized by the state as an integral part of its overall port operations." *International Longshoremen's Association v. North Carolina State Ports Authority,* 332 F.Supp. 95, 100 (E.D.N.C.1971) (initial decision of the court later reversed by the Fourth Circuit). Chief Judge Butler considered these arguments unconvincing. He stated:

> The state contends that Ports Authority is not operated for profit, as was the railroad in *Parden,* and that the operation of a port is a function in which state governments normally engage. It appears from the evidence in this case that the Ports Authority generates revenue which is used to cover normal operating expenses and that any excess of revenue above the normal operating expenses is used for capital improvements. It also appears that many states on the eastern seaboard operate a port authority. The State contends that, therefore, the operation is not unique to state government, and is not a function in which private business associations normally engage. The fact remains, however, that the operation of the railroad and port involved in this case is essentially a commercial and proprietary enterprise.

370 F.Supp. at 38. Similarly, the fact remains in this case that the operation of a ferry system is essentially a commercial and proprietary enterprise.

 Therefore, the Court concludes that on the facts of this case and on the prior case law of the Fourth Circuit and this Court, the defendant is not immune from suit under the Jones Act by virtue of the eleventh amendment. Defendant's motion for summary judgment as to the Jones Act cause of action is denied.

For the reasons set out in note 1 of Magistrate McCotter's memorandum and recommendation of 7 April 1982, defendant's motion for summary judgment as to the general maritime law cause of action of unseaworthiness is also denied. Because the parties did not address this cause of action in their initial memoranda of law, this denial is without prejudice. The motion as to this cause of action may be renewed at the time of trial.

AND IT IS SO ORDERED.