Kevin Wayne SULLIVAN,
Plaintiff-Appellant,

v.

The GEORGIA DEPARTMENT OF NATURAL RESOURCES and the Research Vessel "Anna", Defendants-Appellees.

No. 82–8694.

United States Court of Appeals,
Eleventh Circuit.

Feb. 13, 1984.

Rehearing and Rehearing En Banc
Denied March 13, 1984.

Edward E. Boshears, Brunswick, Ga., for plaintiff-appellant.

Patricia T. Barmeyer, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before HILL and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

In this appeal, Kevin Wayne Sullivan challenges the dismissal of his complaint in an action under the Jones Act, 46 U.S.C. § 688, and the general maritime law,

arising from an incident aboard a boat owned and operated by the State of Georgia. The sole question presented is whether the Eleventh Amendment precludes Sullivan from pursuing such a suit against a state department and one of its vessels in federal court. Specifically, the issue is whether the State of Georgia constructively waived immunity under the Eleventh Amendment by operating a research vessel in the navigable waters of the United States. Concluding that it did not, we affirm the judgment of the district court.

## I. BACKGROUND

The Research Vessel "Anna" (R/V "Anna") is owned and operated by the Georgia Department of Natural Resources (DNR). Rigged much like an ordinary shrimp boat, the R/V "Anna" monitors the coastal waters of Georgia, and at times Florida, in connection with state fish and shrimp assessment programs. Prior to February 25, 1982, Kevin Wayne Sullivan was employed as a second mate on the R/V "Anna." On that date, he was severely injured when a loose boom struck his head.

Asserting that he was a "seaman" under the terms of the Jones Act, 46 U.S.C. § 688, Sullivan filed suit against the DNR and the R/V "Anna," seeking damages for injuries resulting from the negligence of the defendants and the unseaworthiness of the vessel. In its order of October 29, 1982, the district court granted the defendants' motions to dismiss on Eleventh Amendment grounds.

## II. PRELIMINARY ISSUES

█ The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign State.

Although the amendment does not, by its terms, bar federal court suits brought against a state by its own citizens, it is well established that a nonconsenting state is immune from such suits as well as those brought by citizens of another state. *See*

*Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–1356, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Cate v. Oldham,* 707 F.2d 1176, 1180 (11th Cir.1983).

█ A threshold issue in an Eleventh Amendment case is whether the suit against the defendant is properly characterized as a suit against the state. That the instant action against the DNR and the R/V "Anna" should be so characterized is not seriously disputed.

To the extent that actions under the Jones Act, 46 U.S.C. § 688, and actions under the general maritime law are barred by the Eleventh Amendment unless the state has waived its immunity, *see Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *In re New York (Walsh),* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); *In re New York (The Queen City),* 256 U.S. 503, 41 S.Ct. 588, 65 L.Ed. 1057 (1921), the central question is whether the State of Georgia waived, expressly or impliedly, immunity under the Eleventh Amendment. Sullivan does not contend that there was an express waiver of immunity on the state's part, so we need only consider whether there was an implied, or constructive, waiver in this case.

## III. CONSTRUCTIVE WAIVER

The leading Supreme Court cases in this field are *Parden v. Terminal Railway of the Alabama State Docks Department,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), and *Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). In *Parden,* the Court held that the State of Alabama had waived its Eleventh Amendment immunity from liability under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, which provides that "[e]very common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce," 45 U.S.C. § 51, and that actions under the Act "may be brought in a district court of the United States," 45 U.S.C. § 56. The Court initially addressed

two questions: whether Congress in enacting the FELA intended to subject a state to suit under the Act and whether Congress had the power to do so over the state's claim of immunity. Emphasizing the "all-embracing language" of the statute, the Court concluded that the FELA did authorize suit against a publicly owned railroad despite a claim of sovereign immunity. 377 U.S. at 188–89, 84 S.Ct. at 1210–1211. Noting that "the States surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce," the Court also concluded that imposition of the FELA right of action upon a state-owned railroad is within the congressional regulatory power. *Id.* at 191–92, 84 S.Ct. at 1212–1213. The Court then held that by operating a railroad for profit in interstate commerce, the state had knowingly entered a federally regulated sphere and had thereby consented to suit in federal court. The Court stated:

> Our conclusion is simply that Alabama, when it began operation of an interstate railroad approximately 20 years after enactment of the FELA, necessarily consented to such suit as was authorized by that Act. By adopting and ratifying the Commerce Clause, the States empowered Congress to create such a right of action against interstate railroads; by enacting the FELA in the exercise of this power, Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit.

*Id.*

On the basis of *Parden,* several lower courts ruled that states venturing into the federally regulated sphere of maritime commerce waived their immunity under the Eleventh Amendment from suits brought by employees on state-owned vessels. *See Rivet v. East Point Marine Corp.,* 325 F.Supp. 1265, 1267 (S.D.Ala.1971), *overruled, Benniefield v. Valley Barge Lines,*

472 F.Supp. 314, 317 (S.D.Ala.1979); *Adams v. Harris County, Texas,* 316 F.Supp. 938, 949 (S.D.Tex.1970), *rev'd on other grounds,* 452 F.2d 994 (5th Cir.1971), *cert. denied,* 406 U.S. 968, 92 S.Ct. 2414, 32 L.Ed.2d 667 (1972); *Huckins v. Board of Regents of the University of Michigan,* 263 F.Supp. 622, 623 (E.D.Mich.1967); *Cocherl v. Alaska,* 246 F.Supp. 328, 330 (D.Alaska 1965).

The Supreme Court then decided the *Employees* case, in which it rejected the claims of state employees under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19. While conceding that Congress intended to bring the employees in question within the coverage of the statute, the Court indicated that the issue was whether Congress intended to abrogate the states' Eleventh Amendment immunity from suit *in federal court.* The Court first distinguished *Parden* as involving a business which the state operated "for profit," stressing that the state institutions in *Employees* were "not operated for profit [and thus were] not proprietary." 411 U.S. at 284, 93 S.Ct. at 1617. The Court then stated:

> When employees in State institutions not conducted for profit have such a relation to interstate commerce that national policy, of which Congress is the keeper, indicates that their status should be raised, Congress can act. And when Congress does act, it may place new or even enormous fiscal burdens on the States. Congress, acting responsibly, would not be presumed to take such actions silently.

*Id.* at 284–85, 93 S.Ct. at 1618. Finding that Congress had not indicated "in some way by clear language that the constitutional immunity was swept away," *id.,* the Court declined to "conclude that Congress conditioned the operation of these facilities on the forfeiture of immunity from suit in a federal forum," *id.*

The law of this circuit was plainly stated in *Intracoastal Transportation, Inc. v. Decatur County, Georgia,* 482 F.2d 361 (5th Cir. 1973), in which the former Fifth Circuit assessed the effect of the *Employees* decision on the holding in *Parden.*[1] The court declared:

---

1. The Eleventh Circuit, in the en banc decision

*Bonner v. City of Prichard,* 661 F.2d 1206, 1209

[T]he *Employees* decision added an additional requirement to the *Parden* test for determining whether a private party may successfully invoke a federal court's jurisdiction in his suit against a State. It is no longer sufficient merely to show that a State has entered a federally regulated sphere of activity and that a private cause of action is created for violating the applicable federal provision, but *in addition the private litigant must show that Congress expressly provided that the private remedy is applicable to the States.*

*Id.* at 365 (emphasis added) (footnote omitted); *see also Freimanis v. Sea-Land Service, Inc.,* 654 F.2d 1155, 1158 (5th Cir.1981) (reaffirming adherence to the "clear statement" approach to immunity taken in *Intracoastal*).

In response to the Supreme Court's decision in *Employees* and the Fifth Circuit's interpretation of that decision, one of the lower courts which had initially extended *Parden* to suits arising from state maritime activity reversed its stance. In *Benniefield,* the Southern District of Alabama held that waiver of immunity under the Eleventh Amendment could not be implied in an admiralty action against a state without a clear statement from Congress that the cause of action encompassed a private remedy applicable to the state. *See* 472 F.Supp. at 317. Similarly relying on *Intracoastal,* the Southern District of Texas recently held that no implied waiver of immunity from Jones Act liability could be found where the state operated a ferry service in navigable waters. *See Welch v. State Department of Highways and Transportation,* 533 F.Supp. 403, 406 (S.D.Tex. 1982). In applying the "clear statement" approach, the court stated:

The wording of the Jones Act itself does not include an express decision by Congress to abrogate the eleventh amendment immunity of the states and Plaintiff has not demonstrated through the legislative history of this statute that Congress had a specific intent to allow private parties to bring suit against a state.

*Id.*

The result dictated by *Intracoastal* is evident. Assuming that the State of Georgia entered a federally regulated sphere of activity by operating a research vessel and that a private cause of action is created for violating the Jones Act, neither the statute nor its legislative history constitutes an express congressional provision that the private remedy is applicable to the states. More precisely, Sullivan has failed to demonstrate Congress' express intention to abrogate immunity from suit in federal court. Accordingly, we hold that the DNR's operation of the R/V "Anna" did not constitute a constructive waiver of Eleventh Amendment immunity from suits under the Jones Act and the general maritime law.[2]

(11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**2.** Although a panel of this court, as opposed to the court en banc, is bound by former Fifth Circuit precedent, careful reading of the cases suggests to us that *Intracoastal* may sweep too broadly in its interpretation of *Employees.* First, the *Intracoastal* court formulated *Employees'* requirement of a clear statement of congressional intent to abrogate federal court immunity as a requirement of a clear statement of congressional intent to provide a private remedy against the states. Thus the question whether Congress intended a remedy in federal court was broadened to the question whether Congress provided any private remedy at all. In *Employees,* the Court found that there was a

private remedy, but that Congress said nothing indicating that federal courts were competent to render judgment against nonconsenting states. Here there is arguably a private remedy against the states, *see Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 281, 79 S.Ct. 785, 789–790, 3 L.Ed.2d 804 (1959); the issue should be whether Congress explicitly authorized suit in federal court notwithstanding immunity under the Eleventh Amendment.

More important, the Court in *Intracoastal* apparently ignored the Supreme Court's inquiry into the availability of alternative remedies. In *Employees,* the Secretary of Labor had authority to bring suit under the FLSA. In this case, as in *Parden,* there is no corresponding public enforcement mechanism.

Sullivan cites two cases from district courts in other circuits as establishing that states engaging in maritime activities impliedly waived their Eleventh Amendment immunity from liability under the Jones Act. In *In re Holoholo,* 512 F.Supp. 889 (D.Hawaii 1981), the court ruled that "the intent to abrogate [immunity] manifested in the Jones Act ... established constructive waivers" in a case involving Hawaii's operation of a research vessel for profit. *Id.* at 903. In *Brody v. North Carolina,* 557 F.Supp. 184 (E.D.N.C.1983), the court observed, "by enacting the Jones Act, Congress demonstrated its intention to abrogate the State's eleventh amendment immunity." *Id.* at 186. In finding an implied waiver of immunity in a case involving a state-owned ferry, the court underscored "the fact ... that the operation of a ferry system is essentially a commercial and proprietary enterprise." *Id.* at 187. We find these cases unpersuasive. First, in neither case did the court attempt to apply the "clear statement" approach adopted in *Intracoastal.* Second, unlike in the instant case, the businesses in question were conducted by the states for profit. Although the proprietary nature of a publicly owned enterprise is not necessarily dispositive of the waiver issue, it was central to the *Employees* Court's analysis, specifically its decision to require "clear language that the constitutional immunity was swept away." 411 U.S. at 285, 93 S.Ct. at 1618.

For these reasons, the judgment of the district court dismissing the complaint is AFFIRMED.