**Virginia SMITH, wife of/and Robert J. Smith**

v.

**STATE OF LOUISIANA, DEPARTMENT OF WILDLIFE AND FISHERIES.**

Civ. No. 83–5868.

United States District Court, E.D. Louisiana.

May 7, 1984.

Albert C. Miranda of Bernard, Cassisa, Babst & Saporito, Metairie, La., for plaintiffs.

Eavelyn Brooks of Louisiana Dept. of Justice, New Orleans, La., for defendant.

## MEMORANDUM OPINION

FELDMAN, District Judge.

Virginia and Robert J. Smith brought this action for damages under the Jones Act, general maritime law and Louisiana law for injuries sustained while he was assigned to a vessel in the course of his duties as an agent for the Louisiana Department of Wildlife and Fisheries. Smith alleges that the injury occurred while he was inspecting a vessel which was stopped for illegal shrimp trawling.

Defendants, the State of Louisiana and the Louisiana Department of Wildlife and Fisheries, moved to dismiss the plaintiffs' claims. They assert that the Eleventh Amendment is a bar to the jurisdiction of this Court. The sole issue here is the effect of the Eleventh Amendment upon the jurisdiction of this Court in a Jones Act and general maritime law claim for damages against the State and one of its agencies. The Motion was heard and granted on March 14, 1984. These written reasons follow.

■ The Eleventh Amendment to the United States Constitution provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Amendment has been given a variety of interpretations, some broad, some narrow. Although by its literal terms the Amendment does not bar suits in Federal Court brought against a State by its own citizens, it is well established that a nonconsenting State enjoys protection in such suits, as well as in those brought by citizens of another State. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347–1356, 39 L.Ed.2d 662 (1974). *But see Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 3323, 73 L.Ed.2d 1057 (1982) (Brennan, J., dissenting). Similarly, although the Amendment does not literally apply to proceedings in admiralty, the Supreme Court has held that it applies in certain admiralty actions. *See In re New York,* 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921), *cited* in *Treasure Salvors,* 102 S.Ct. at 3314 n. 17.

■ A threshold question in any Eleventh Amendment analysis is whether the suit against the defendant is properly characterized as a suit against the State. That is indisputably true as to the defendant, State of Louisiana, in this case. This Court also holds that insofar as this suit is brought against the Louisiana Department of Wildlife and Fisheries, it is brought against the State. In *Kurkiewicz v. State of Louisiana through the Department of Health,* 560 F.Supp. 911 (M.D.La.1983), the Court listed seven factors to be considered in determining the status of the agency in question to determine if a suit against the agency is a suit against the State:

1) Whether the agency has been granted the right to hold and use property;

2) Whether it has express authority to sue and be sued in its corporate name;

3) The extent of its independent management authority;

4) The treatment of the agency by State courts;

5) Whether the State is responsible for the agency's debt;

6) Whether the agency is primarily concerned with local, as opposed to statewide problems; and,

7) The degree of general financial autonomy of the agency.

Title 36 of the Louisiana Revised Statutes delineates the organization of the Executive Branch of State government. Chapter 13 of that Title focuses on the organization of the Department of Wildlife and Fisheries. The Department, like the agency sued in *Kurkiewicz,* is a "body corporate with the power to sue and be sued". LSA–R.S. 36:602. Funds collected by the Wildlife and Fisheries Commission, a part of the Department are, with the exceptions set out in Article VII, Section 9(A) of the Louisiana Constitution of 1974, paid into the State treasury to be credited to the Bond Security and Redemption Fund. LSA–R.S. 56:10. Some of these monies may eventually be deposited, by law, to a Conservation Fund to be used solely for the programs and purposes of the Commission. LSA–R.S. 56:10. However, these monies are available as appropriated by the Legislature. Id. Thus, the Department is fiscally dependent upon the State. Moreover, under Article 12, Section 10 of the Louisiana Constitution, "[n]o

judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated by the legislature or by the political subdivision against which judgment is rendered." Finally, the Department is engaged in what are clearly statewide aims, in enforcing State law and managing the State's wildlife and resources. LSA–R.S. 36:601–602. Under these circumstances, the Court finds that the State is the real party in interest. *See Kurkiewicz v. State of Louisiana through Dept. of Health,* 560 F.Supp. 911 (M.D.La.1983); *Usry v. Louisiana Department of Highways,* 459 F.Supp. 56 (E.D.La.1978). *See also Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 277, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959).

Having decided this suit is against the State, the central issue in this case thus becomes whether the State has waived its immunity, constructively, impliedly, or expressly, under the Eleventh Amendment to suit in Federal Court in an action for damages under the Jones Act and general maritime law.

The case law meanders erratically.

In 1959 the Supreme Court decided *Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), and held that the Eleventh Amendment does not bar Federal jurisdiction of a Jones Act claim by an employee against a bistate agency that operated a ferryboat across the Mississippi River. *Petty* stands on two legs. First, that the states involved expressly waived their Eleventh Amendment immunity by becoming party to and acting under an interstate compact that was approved by Congress on condition that the contracting states consent to the jurisdiction of the Federal courts. The Court found the compact;

"reserves the jurisdiction of the federal courts to act in any matter ... over which they would have jurisdiction by virtue of the fact that the Mississippi is a navigable stream and that interstate commerce is involved. There is no more apt illustration of the involvement of the commerce power and the power over maritime matters than the Jones Act. (citations omitted) This is not enlarging the jurisdiction of the federal courts but only recognizing as one of its appropriate applications the business activities of an agency active in commerce and maritime matters." p. 790

Second, the Court noted that the Jones Act did not exclude States operating vessels from the definition of "employer" used in the Act. The Court reasoned that "[w]hen Congress wished to exclude state employees, it expressly so provided." 358 U.S. at 282, 79 S.Ct. at 790.

■ A broad reading of *Petty* might suggest that when a State enters into commerce, or operates a vessel, on navigable waters, it waives its Eleventh Amendment immunity from suit in claims brought under the Jones Act and other federal statutes regulating commerce on navigable waters. *Petty,* however, has generally been viewed as standing only for a rule of no immunity in cases of interstate compacts with sue-and-be-sued clauses. See Comment, "Eleventh Amendment Immunity and State-Owned Vessels," 57 Tul.L.Rev. 1523, at 1537 (1983). *See also Sullivan v. Georgia Dept. of Natural Resources,* 724 F.2d 1478, 1481 (11th Cir.1984). That view, with which this Court agrees, is consistent with the notion that a State's conduct must clearly express a waiver to defeat a State's historical immunity. Otherwise, the fiscal integrity of the States could be seriously threatened, and their political autonomy diminished. See Comment, *id.* at 1524.

Recent cases have centered upon two subsequent Supreme Court decisions. See *Employees of the Dept. of Public Health & Welfare v. Dept. of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Parden v. Terminal Railway of the Alabama State Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). Both cases developed, and refined, the doctrine of constructive waiver of Eleventh Amendment immunity.

In *Parden,* the Court held that the State of Alabama waived its Eleventh Amend-

ment immunity from suit under the Federal Employers Liability Act (FELA). The FELA provides that "[e]very common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such employer in commerce...." 45 U.S.C. 51. Further, such actions under the Act "may be brought in a district court of the United States." 45 U.S.C. 56. In *Parden,* the Court discussed whether Congress had the power to do what it did, as against the State's claim of immunity, and whether Congress intended to subject a State to suit. The Court concluded that Congress, in making the FELA applicable to "every" common carrier by railroad in interstate commerce, meant what it said. The Court emphasized that the language of the FELA was "all-embracing" and that its purpose was no less applicable to State railroads and their employees. The Court deferred to Congress' judgment that, in view of the dangers of railroad work, and the difficulty of recovering for injuries under existing rules, railroad workers should have a right of action as provided by the FELA, saying, "we should not presume to say in the absence of express provision to the contrary, that it intended to exclude a particular group of such workers from the benefits conferred by the Act." 84 S.Ct. at 1211. The Court also emphasized that to do so would result in a right without a remedy— that Congress would have made every interstate railroad liable, but left one class of employees, those with State-owned railroads, without any effective means of enforcing that liability. The Court refused to conclude that Congress intended "so pointless and frustrating a result." *Id.* 84 S.Ct. at 1212.

The *Parden* Court similarly had no trouble concluding that Congress possessed the power to subject a State to suit under the FELA. The Court noted that "the States surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce." *Id.* However, *Parden* does not read out the Eleventh Amendment. The Court merely concluded that when the State of Alabama began opera-

tion of an interstate railroad approximately 20 years after the enactment of the FELA, it necessarily consented to such suit as was authorized by that Act. By operating such a railroad, "Alabama must be taken to have accepted that condition and thus to have consented to suit." *Id.* 84 S.Ct. at 1213.

If *Parden* were the last word, this Court would have little difficulty in refusing to dismiss this suit. In fact, a number of lower courts have, on the basis of *Parden,* ruled that States venturing into the federally regulated waters of maritime commerce waived their immunity under the Eleventh Amendment from suits brought by employees on State-owned vessels. *See Rivet v. East Point Marine Corp.,* 325 F.Supp. 1265, 1267 (S.D.Ala.1971), overruled, *Benniefield v. Valley Barge Lines,* 472 F.Supp. 314, 317 (S.D.Ala.1979); *Adams v. Harris County, Texas,* 316 F.Supp. 938, 949 (S.D.Tex.1970), *rev'd on other grounds,* 452 F.2d 994 (5th Cir.1971), *cert. denied* 406 U.S. 968, 92 S.Ct. 2414, 32 L.Ed.2d 667 (1972); *Huckins v. Board of Regents of the University of Michigan,* 263 F.Supp. 622 (E.D.Mich.1967); *Cocherl v. Alaska,* 246 F.Supp. 328 (D.Alaska 1965).

But the Supreme Court decided the *Employees* case after *Parden.* In *Employees* the Court rejected the claims of State employees brought under the Fair Labor Standards Act. 29 U.S.C. 201–19. The Court in *Employees* added an additional requirement to *Parden.* Although the Court conceded that Congress had extended to certain State employees coverage under the Act, it noted the absence of any indication that Congress intended to make it possible for citizens to sue a State in the federal courts under the Act in question. By extending the coverage of the Act, without changing the section providing for suits by employees for liquidated damages as well as unpaid minimum or overtime wages, or without indicating by clear language that the constitutional immunity was swept away, Congress, in the eyes of the Court, made it difficult to infer that it intended to deprive the States of their immunity. Therefore, the Court could not conclude

that Congress conditioned the operation of the facilities in question upon the forfeiture of immunity of suit in a Federal forum. In short, *Employees* requires a clear expression of waiver.

*Employees* did not overrule *Parden.* *Employees* distinguishes *Parden* on the ground that it involved a business the State operated for profit, emphasizing that the State institutions involved in *Employees* were "not operated for profit" and were "not proprietary". 411 U.S. at 284, 93 S.Ct. at 1617.

The Fifth Circuit assessed the effect of *Employees* upon the *Parden* decision in *Intracoastal Transportation, Inc. v. Decatur County, Georgia,* 482 F.2d 361 (5th Cir.1973). Importantly, the Court observed:

> "It is no longer sufficient merely to show that a State has entered a federally regulated sphere of activity and that a private cause of action is created for violating the applicable federal provision, but in addition the private litigant must show that Congress *expressly* provided that the approrpriate remedy is applicable to the States." p. 365 (emphasis added)

See also *Freimanis v. Sea-land Service, Inc.,* 654 F.2d 1155, 1154 (5th Cir.1981).

In light of the Supreme Court's decision in *Employees,* and its interpretation by the Fifth Circuit in *Intracoastal,* the Eleventh Circuit recently held that no implied waiver of immunity for Jones Act immunity could be found where an employee on a State research vessel had been severely injured in an accident aboard a vessel owned and operated by the State. See *Sullivan v. Georgia Dept. of Natural Resources,* 724 F.2d 1478 (11th Cir.1984). Similarly, the Southern District of Alabama has reversed the position taken earlier in that district, and held that a waiver of Eleventh Amendment immunity could not be implied in an admiralty action against a State by a longshoreman without a clear statement from Congress that the right of action encompassed a private remedy applicable to the State. See *Benniefield v. Valley Barge Lines,* 472 F.Supp. 314 (S.D.Ala.1979).

Recently, the Southern District of Texas held that absent an explicit abrogation by Congress of a State's Eleventh Amendment immunity, an implied waiver of immunity will not be presumed merely because the State engaged in Jones Act activities. See *Welch v. State Department of Highways and Transportation,* 533 F.Supp. 403, 406 (S.D.Tex.1982). *Welch* involved the State's operation of a ferry service in navigable waters. The court applied the clear statement school of thought and found no express abrogation of the Eleventh Amendment immunity by States in the provisions of the Jones Act, nor any indication of such an intent in the legislative history of the Act. 533 F.Supp. at 406. To the extent that the *Welch* decision may be taken as holding that the Jones Act does not impose substantive Jones Act liability in any court (such as in State courts), it is not adopted by this Court. *Employees* does not stand for that, and this Court believes *Welch* might have gone beyond the limits of *Employees* on that question.

Two recent district court opinions hold the Eleventh Amendment does not bar the imposition of Jones Act liability upon the States and require comment. *In re Holoholo,* 512 F.Supp. 889 (D.Hawaii 1981) was a wrongful death suit arising out of the loss of a research vessel which had been chartered by the Research Corporation of the University of Hawaii. Named defendants included the State of Hawaii, the Research Corporation, the University of Hawaii, and the Regents of the University of California. Although the Court found an express waiver by statute or contract, it also addressed the question of constructive waiver under *Parden.* The Court noted that in creating causes of action for maritime torts, Congress asserted its Federal power to control the admiralty and maritime fields in its substantive as well as its procedural features, and that this power, "perhaps broader than the commerce power", encompasses the power to abrogate State Eleventh Amendment immunity. 512 F.Supp. at 904. However, the Court also emphasized the proprietary nature of the

activity engaged in by the State; two states were seeking to conduct federal research for pay, the right to which each sought on a competitive basis. Proprietary activity caused a constructive waiver as in *Parden*. *Id*. The Court believed that due to the incorporation of the principles and remedies of the FELA, *Parden* was directly applicable to the Jones Act, and relied upon Congress' broad powers to regulate admiralty and maritime matters.

*Brody v. State of North Carolina*, 557 F.Supp. 184 (E.D.N.C.1983) involved a seaman employed upon a State-owned and operated ferry. The *Brody* court based its holding that the State was not immune from suit under the Jones Act by virtue of the Eleventh Amendment upon three grounds. First, the Court noted that the admiralty and maritime powers of Congress are exclusive, and concluded that the Congress had the power to subject a State to suit under the Jones Act. Second, the Court found that Congress, by enacting the Jones Act, demonstrated its intention to abrogate a State's Eleventh Amendment immunity (citing *Parden*). The Court believed, due to the incorporation of the FELA into the Jones Act, that Congress intended the Jones Act to apply to all employers of seamen, and saw no reason to treat employers under the Jones Act and the FELA differently. Finally, the Court found that the State entered into a federally regulated sphere, and thus consented to suit, because the Jones Act predated the decision of North Carolina to establish the ferry. The Court, applying Fourth Circuit law, found the Supreme Court's opinion in *Employees* was not controlling authority.

Both *Holoholo* and *Brody* ignore the narrowing impact *Employees* has on *Parden*, and reject the "clear statement" of waiver approach, which this Court adopts.

In the Fifth Circuit, *Employees* controls. The Fifth Circuit has consistently required clear statement of a congressional intent to abrogate the States' Eleventh Amendment immunity in other areas of activity. See, *Intracoastal Transportation, Inc. v. Decatur County, Georgia*, 482

F.2d 361 (5th Cir.1973); *Freimanis v. Sea-Land Service, Inc.*, 654 F.2d 1155, 1158 (5th Cir.1981). Although Congress clearly has the power to impose liability, and to abrogate State immunity from suit in the Federal courts, this Court holds Congress has not done so in Jones Act cases in a manner which clearly expresses that intent. While the plaintiff might have a Jones Act claim against the State, it must pursue that claim in State court.

Accordingly, for the reasons expressed, the Motion to Dismiss is GRANTED.