Jean E. WELCH, Plaintiff-Appellant,

v.

STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION and The State of Texas, Defendants-Appellees,

Drott Manufacturing Company and J.I. Case Co., Defendants.

No. 83–2253.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1984.

Opinion on Rehearing Oct. 31, 1984.

---

16. If the district court deems it appropriate to also reopen the evidence, it has discretion to do so.

Michael D. Cucullu, Houston, Tex., for plaintiff-appellant.

Joe Jarrard, Jr., Dudley Fowler, David Allan Smith, Richard D. Naylor, Asst. Attys. Gen., Austin, Tex., for State Dept. of Highways & State of Tex.

Before BROWN, GEE and WILLIAMS, Circuit Judges.

GEE, Circuit Judge:

■ Plaintiff Jean Welch was injured in the course of her employment as a "seaman" (marine technician) while working on the ferry landing dock at Galveston, Texas. Ms. Welch sued her employer, the Texas Highway Department, and the State of Texas under the Jones Act and also sued the manufacturer of the mobile crane which she asserts contributed to her injury in a products liability suit. The district court, 533 F.Supp. 403, dismissed her Jones Act claim on the ground that the state defendants had not waived Eleventh Amendment immunity either expressly, by virtue of the state Tort Claims Act, or impliedly, under the *Parden* doctrine.[1] Ms. Welch appeals the dismissal of her Jones Act claims[2] and we reverse.

The Eleventh Amendment immunizes an unconsenting state from federal court suits brought by citizens of the United States. A state can consent to suit, however, either expressly—by enacting a statute—or impliedly, by entering into a federally regulated sphere of activity where a private cause of action is provided for the violation of the applicable federal regulatory statute and Congress has expressly provided for that remedy to apply to the states. *Employees of the Department of Public Health and Welfare, State of Missouri v. Department of Public Health and Welfare, State of Missouri,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). Since we conclude that there has been an express consent, we need not consider any question of an implied one.

■ The Texas Tort Claims Act waives immunity to suit against the State for personal injuries proximately caused by the negligence of any officer or employee acting within the scope of employment if the injury arose from "the operation or use of a motor driven vehicle and motor driven equipment." Tex.Rev.Civ.Stat.Ann. art. 6252–19 § 3 (Vernon Supp.1980–81). Section 4 of the Torts Act specifically waives the State's immunity from suit to the extent of the "liability created by Section 3" and grants permission to all claimants to sue the State of Texas for "all claims arising" under the Act. Section 19 of the Act, however, limits this waiver of immunity by providing that a governmental unit carrying worker's compensation is entitled to the privileges and immunities granted by the Workers' Compensation Act.[3] These include immunity from suits for damages under most circumstances. Section 19 reads:

> Any governmental unit carrying Workmen's Compensation Insurance or accepting the provisions of the Workmen's Compensation Act of the State of Texas

1. *Parden v. Terminal Railway of Alabama State Docks Department,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

2. The products liability part of the action has been concluded.

3. The highway department carries workers' compensation insurance under a statute specifically providing for such. Tex.Rev.Civ.Stat.Ann. art. 6674s (Vernon 1977). Section 3 of this statute limits employees to this exclusive remedy for injuries sustained while working within the course of their employment.

shall be entitled to all of the privileges and immunities granted by the Workmen's Compensation Act of the State of Texas *to private persons and corporations.* (emphasis added).

As of 1969, however, when this statute was enacted, it had long been clear that the state could confer no immunity from federal maritime remedies on "private persons and corporations." *E.g., Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). No private shipping company, after *Pope & Talbot* at the latest, could have rationally concluded that by taking out a state workers' compensation policy on its seamen, it could deprive them of their Jones Act remedies on the ground that state law made the compensation remedy exclusive. That this was the case was presumedly known, therefore, to the Texas Legislature when it enacted Section 19; for it is a maxim of general application, recognized by Texas courts, that:

> "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the consti-

tution, but also with reference to other statutes and the decisions of the courts." *McBride v. Clayton,* 166 S.W.2d 125, 128 (Tex.Sup.1942).

Since this is so, we must presume that in consenting to suit against state departments carrying workers' compensation to the same extent as "private persons and corporations" carrying such coverage could be sued, the Legislature intended the departments to be subject to federal maritime remedies.[4]

REVERSED AND REMANDED.

JOHN R. BROWN, Circuit Judge, concurring:

I concur in the result reached by Judge Gee, but I think it imperative that we reach that result by way of federal, rather than state, law. I respectfully disagree with the two views of Judge Williams that: (i) the state can impose on its waiver of immunity the unconstitutional mandatory application of the State Workers' Compensation Act; and (ii) *Parden* has lost its vitality. With this Court now speaking as a discordant trio and the outright conflict (in result and reasoning) with our former colleagues in the Eleventh Circuit,[1] this case calls for authoritative review by the Supreme Court, despite our reversal and remand for a trial.

---

**4.** We recognize that our approach runs the risk of being criticized as overly technical and precious—as the dissent suggests. Despite these possible disadvantages, however, we remain convinced that the best way to ascertain a legislature's intent is to look to what it has *said* —and to presume that its statements were made and enacted into law with full understanding of the implications of their language in light of then existing jurisprudence. Any other approach creates what we consider a greater danger than technicality—that of putting this federal court in the position of second-guessing the Texas legislature.

The dissent cites *Lyons v. Texas A & M University,* 545 S.W.2d 56 (Tex.Civ.App.1976—writ ref'd n.r.e.), as an authoritative state interpretation of the effect of section 19 and notes that *Lyons* was written by Judge Cire, the District Judge in this case, when he was on the state bench. *Lyons* does not address the specific construction argument on which we rely today and therefore cannot be read as a governing exposi-

tion of state law. More important, *Lyons* is bottomed on a fundamental misconception of the relative powers of the state and federal governments: it is not true that, as *Lyons* holds, "the State ... could provide any remedy it wished and limit seamen to that remedy exclusively." 545 S.W.2d at 59. The proper statement would be that "the State may waive sovereign immunity or decline to do so to whatever extent it likes; but once it has waived immunity, it may not decree that the owners of maritime claims as to which it has done so are limited to the worker's compensation remedy." We note that the Texas Supreme Court, in refusing the writ n.r.e. declined to affirm the reasoning underlying the lower court's opinion. And while we recognize the consistency of the district court's views, we are not the more persuaded by them.

**1.** *Sullivan v. Georgia Dept. of Nat'l Resources,* 724 F.2d 1478 (11th Cir.1984).

Initially, it must be recognized that two issues are at stake in the immunity defense raised by Texas. The first question is substantive: Does the Jones Act reach state defendants who are employers of seamen? Or, do states enjoy a substantive immunity that would protect them from suit in either federal or state court? In other words, does the Jones Act apply to a person classified as a seaman in the employment of a state or state agency? The second question is jurisdictional in the Eleventh Amendment sense: Assuming there is a substantive cause of action against a state, does the Eleventh Amendment bar prosecution of the suit in federal court? Or, on the other hand, has Congress, pursuant to its enumerated constitutional powers, abrogated this jurisdictional immunity in this particular statutory cause of action? I believe that the Supreme Court has squarely answered the substantive question in *Petty v. Tennessee-Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). The jurisdictional Eleventh Amendment question is answered in *Parden v. Terminal Ry. of Alabama State Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). The body of recent Supreme Court decisions does not overrule these clearly applicable precedents, either explicitly or implicitly.

The inability of this Court to decide either (or both) question compels review by an authoritative tribunal.

### Substantive

In enacting the Jones Act pursuant to both its admiralty-maritime power and its commerce power, Congress included within the class of Jones Act defendants those states who would employ seamen aboard

vessels in navigable waters. In *Petty*, the Supreme Court held that the Jones Act applied to a claim of an employee in the category of a seaman who was injured in the operation of a ferry across the Mississippi River by a bistate agency. On the Eleventh Amendment jurisdictional issue, the Court relied in part on the language in the interstate compact between Tennessee and Missouri as evincing consent to suit in federal court. However, on the substantive question of the application of the Jones Act, the *Petty* court relied solely on the congressional language and intent in the Jones Act:

> We can find no more reason for excepting state or bi-state corporations from "employer" as used in the Jones Act than we could for excepting them either from the Safety Appliance Act or Railway Labor Act ... "When Congress wished to exclude state employees, it expressly so provided." The Jones Act has no exceptions from the broad sweep of the words "Any seaman who shall suffer personal injury in the course of his employment may" etc.

359 U.S. at 282, 79 S.Ct. at 790 (citations omitted). The *Petty* dissenters believed that the claim was forbidden by the Eleventh Amendment, and expressly did not reach this substantive argument. Justice Frankfurter stated: "I assume the Court is referring solely to the substantive applicability of [the Jones] Act." 395 U.S. at 289, 79 S.Ct. at 794 (Frankfurter, J., dissenting).

Whether or not the *Petty* majority's quoted statement on the applicability of the Jones Act also included the jurisdictional question, it is clear that it settled *at least* the substantive question.[2] Like *Petty*, the

2. In *Maine v. Thiboutot*, 448 U.S. 1, 9 n. 7, 100 S.Ct. 2502, 2507 n. 7, 65 L.Ed.2d 555 (1980), the Supreme Court stated: "No Eleventh Amendment question is present, of course, where an action is brought in a state court since the Amendment, by its terms, restrains only 'the Judicial power of the United States.'" *See also Maher v. Gagne*, 448 U.S. 122, 130 n. 12, 100 S.Ct. 2570, 2575 n. 12, 65 L.Ed.2d 653 (1980) (Eleventh Amendment issue is not before court in *Maine v. Thiboutot* when attorneys' fees were awarded against a state by a state court). The

distinction between substantive immunity and Eleventh Amendment immunity in federal court is most clearly drawn in Justice Marshall's concurring opinion in *Employees v. Missouri Pub. Health Dept.*, 411 U.S. 279, 287–98, 93 S.Ct. 1614, 1619–25, 36 L.Ed.2d 251 (1973). In the Supreme Court's latest Eleventh Amendment opinion, the *Employees* concurrence is quoted five times, without any citation to the majority opinion in *Employees*. *Pennhurst State School &*

instant case involved the operation by a state of a ferry boat and a suit brought under the Jones Act. Thus, the *Petty* holding is directly applicable here as to the substantive liability of Texas. The only thing which could possibly shield it from effective liability in this suit is the Eleventh Amendment.

Texas is not aided by its own statutory provision providing that state workers' compensation is the exclusive remedy for employees of governmental units carrying workmen's compensation insurance. Congress, in its constitutional admiralty and maritime power,[3] can make nationally uniform maritime substantive law that is supreme with respect to conflicting state law. *E.g., Pope & Talbot v. Hawn*, 346 U.S. 406, 409–10, 74 S.Ct. 202, 204–05, 98 L.Ed. 143 (1953); *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 160, 40 S.Ct. 438, 440, 64 L.Ed. 834 (1920).

As an example of this federal supremacy and uniformity in the maritime area, as Judge Gee correctly observed, the Supreme Court and this Court have held that state workers' compensation statutes could not be made validly to apply to injuries occurring on navigable waters. *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Ledoux v. Petroleum Helicopters*, 609 F.2d 824 (5th Cir.1980); *Thibodeaux v. Atlantic Richfield Co.*, 580 F.2d 841 (5th Cir.1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979). As one commentator has pointed out, the Texas workers compensation provision could, at most, affect the jurisdictional Eleventh Amendment question, but not the substantive question of the application of the Jones Act.

Thus, even assuming [arguendo] Congress did not in the Jones Act override

eleventh amendment *jurisdictional* immunity, the exclusion by Texas of areas of workers' compensation coverage from the waiver of immunity in the Texas Tort Claims Act might leave the amendment applicable to limit federal *jurisdiction*, but could not prevent the applicability of federal substantive law in state court.

Comment, *Eleventh Amendment Immunity and State-Owned Vessels*, 57 Tul.L.Rev. 1523, 1545 (1983) (emphasis added).

Nor is Texas aided in any way by *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), which held that the commerce power did not justify imposing federal minimum wage standards on state employees. *Usery* reasoned that the Tenth Amendment constrains the application of congressional power against states in their sovereign capacities in such a manner as to "directly displace the States' freedom to structure integral operations in areas of traditional governmental functions." 426 U.S. at 852, 96 S.Ct. at 2474.

Having drawn a line between traditional and non-traditional state activities, the *Usery* court explicitly pointed out that its decision did not impair earlier rulings, such as *Parden v. Terminal Ry. Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), approving federal commerce regulation of *non*-traditional activities such as state-owned and operated interstate railroads. 426 U.S. at 854, n. 18, 96 S.Ct. at 2475, n. 18. *Accord United Transp. Union v. Long Island RR.*, 455 U.S. 678, 686, 102 S.Ct. 1349, 1354, 71 L.Ed.2d 547 (1982). A state's operation of ferry boats, like railroads, is also non-traditional, having been characterized—with no pun intended—by the *Petty* Court as "involving the *launching* of a governmental corporation into an

---

*Hosp. v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1983).

**3.** The admiralty and maritime power is phrased as a grant of judicial power, and is found in art. III. U.S. Const. art. III, § 1. However, the grant of admiralty jurisdiction, coupled with the necessary and proper clause has long been read to support the authority of federal judges to declare federal substantive maritime law and

congressional power to legislate for maritime matters. *Panama RR Co. v. Johnson*, 264 U.S. 375, 386, 44 S.Ct. 391, 393, 68 L.Ed. 748 (1924); *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920); *THE LOTTAWANNA*, 21 Wall (88 U.S.) 558, 22 L.Ed. 654 (1875). D. Robertson, *Admiralty and Federalism*, 145 (1970).

industrial or business field." 359 U.S. at 280, 79 S.Ct. at 789 (emphasis added). *Accord Brody v. North Carolina,* 557 F.Supp. 184 (E.D.N.C.1983) ("ferry system is essentially a commercial and proprietary enterprise").

Moreover, support for Congressional enactment of the Jones Act is not limited to the commerce power, but also includes the admiralty-maritime power. The power of Congress to control and regulate use of navigable waters frees the Jones Act from any Tenth Amendment limits on the commerce power, because the constitutional construct never reserved ·to the states any inviolable power to regulate maritime matters. It was assumed at the time of ratification that maritime law consisted of a body of *international* law observed with some variations by the various national courts. Fletcher, *A Historical Interpretation of the Eleventh Amendment,* 35 Stan. L.Rev. 1033, 1082 (1983).

Finally, *Usery* has been construed too narrowly by later cases [4] for us to extend it seaward of the *Jensen* line. In any case, *Usery* is not applicable to the proprietary activity involved here. Accordingly, I am in agreement with Judge Gee's holding that when Texas employs seamen in the operation of vessels on navigable waters it is subject to the Jones Act as substantive matter.

*Eleventh Amendment and Jurisdiction*

■ The question of whether Congress intended to abrogate Eleventh Amendment

federal jurisdictional immunity in Jones Act cases has also been answered. In *Parden,* an employee of a state-owned railroad operating in interstate commerce brought suit in federal court, seeking recovery from the state for personal injuries under the Federal Employers' Liability Act (FELA). FELA expressly authorized suit in federal court. In reversing this Court's holding that the state was immune, the Supreme Court held that Congress had both the power and the expressed intent to make state-owned interstate railroads subject to suit in federal court.

On the power question, the Court quoted language from *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 196–97, 6 L.Ed. 23 (1824), to demonstrate that Congress had the power to impose conditions upon a state's entry into commerce that would derogate from Eleventh Amendment rights, because the sovereignty of the states is diminished by the absolute and plenary power of Congress over commerce. 377 U.S. at 190–92, 84 S.Ct. at 1211–13.

On the question of congressional intent, *Parden* examined the language of FELA, and declared that Congress meant what it said when it made FELA applicable to "every" common carrier by railroad in interstate commerce, whether state-owned or privately owned. 377 U.S. at 187–88, 84 S.Ct. at 1210–11. Congress "conditioned the ·right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act." *Id.* at 192, 84 S.Ct. at 1213. Thus, Alabama, by

---

**4.** In *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the Court, distinguishing *Usery,* rejected Virginia's contention that the federal Surface Mining Control and Reclamation Act of 1977 violated the Tenth Amendment's reservation of the states' "traditional governmental function" of regulating land use. Next, the Court held in *United Transp. Union v. Long Island RR,* 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982), that *Usery* was not applicable to a provision in the federal Railway Labor Act authorizing a strike against a state-owned railroad. A unanimous Court reasoned that "operation of railroads is not among the functions *traditionally* performed by state and local governments. Federal regulation of state-

owned railroads simply does not impair a state's ability to function as a state." 455 U.S. at 686, 102 S.Ct. at 1354. In *FERC v. Mississippi,* 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982), the Court upheld certain federal statutory controls on state utility regulatory commissions. Perhaps the most unkindest cut of all to *Usery* came in *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), in which the Court held that the Age Discrimination in Employment Act validly applied to state and local employees. The Court chose to validate the act head-on under the commerce power rather than under the Fourteenth Amendment. It has been argued that *EEOC v. Wyoming* has completely eviscerated *Usery.* Note, 14 Seton Hall 356 (1984).

operating the railroad, subjected itself to the condition and consented to suit in federal court. In any event, Congress determined that the operator of the interstate railroad would be deemed to have consented. *Parden* emphasized that what operated as a waiver was effective regardless of whether state law permitted waiver, or whether the state knew waiver would result from its actions. *Id.* at 194, 84 S.Ct. at 1214.

*Parden* is uniquely applicable to Jones Act suits, because the Jones Act expressly incorporates the rules prescribed in FELA cases.[5] Because Congress in FELA conditioned operation of a state-owned railroad on an effectual waiver of sovereign and Eleventh Amendment immunity, and then expressly incorporated FELA rules into the Jones Act, Congress must have intended the same conditions to apply in Jones Act suits arising from the operation of vessels by a state. Several courts have reached this conclusion. *Brody v. North Carolina*, 557 F.Supp. 184 (E.D.N.C.1983); *In re Holoholo*, 512 F.Supp. 889, 904 (D.Hawaii 1981); *Huckins v. Board of Regents of Univ. of Michigan*, 263 F.Supp. 622, 623 (E.D.Mich.1967); *Cocherl v. Alaska*, 246 F.Supp. 328, 330 (D.Alaska 1965).

In dissenting, Judge Williams argues that the Supreme Court has "modified *Parden* by holding that it is not enough to show that the state itself is operating with-

in a federally regulated sphere. A plaintiff must also show that Congress expressly provided that the private remedy would be applicable to the states," citing *Employees of the Dept. of Public Health & Welfare v. Missouri*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Intracoastal Transp. Inc. v. Decatur County, Georgia*, 482 F.2d 361 (5th Cir.1973).

This general summary of the not-entirely-consistent post-*Parden* law may trim some of the broader language in *Parden*, but it is entirely consistent with the holding in *Parden* and its application in this case. *Parden* has not been overruled by either *Employees*—which distinguished *Parden* and has itself since been distinguished— nor has it been overruled by any of the dozen or so post-*Parden* Eleventh Amendment opinions by the Court.[6] Because of the Jones Act's express incorporation of FELA, *Parden* is directly applicable here. Moreover, the express language requirement of *Employees* is satisfied by *Parden*'s holding that "Congress, in making the FELA applicable to 'every' common carrier ... meant what it said," 377 U.S. at 187, 84 S.Ct. at 1210. If, as Judge Williams observes, *Parden* is the high-water mark for congressional abrogation of Eleventh Amendment immunity, *Employees* is a high-water mark for state immunity. Because neither case has been overruled—although *Employees* has implicitly been

---

**5.** The Jones Act provides in part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply....

46 U.S.C. § 688.

The extent to which Congress forbad any limitation, restriction or reduction of these rights is reflected in this part of FELA:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void.

45 U.S.C. § 55.

**6.** *Pennhurst State School & Hosp. v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67

(1984); *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982); *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Maine v. Thiboutot*, 448 U.S. 1, 9 n. 7, 100 S.Ct. 2502, 2507 n. 7, 65 L.Ed.2d 555 (1980); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Employees of Dept. of Pub. Health & Welfare v. Dept. of Pub. Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

weakened—the question is which case is closer to the one before us.

In *Employees*, the Court framed the issue before it as whether *Parden* was applicable or distinguishable. 411 U.S. at 281, 93 S.Ct. at 1616. Finding *Parden* distinguishable in several important respects, *Employees* held that the Eleventh Amendment barred a private suit under the Fair Labor Standards Act for overtime pay brought by employees of state mental hospitals and training schools. Holding that Congress had the power to lift the states' immunity under the commerce clause, and to impose heavy fiscal burdens on the states, 411 U.S. at 284, 93 S.Ct. at 1617, the Court nevertheless declared that it would not extend *Parden* to cover every exercise of the commerce power where Congress did not indicate its purpose to do so "in some way by clear language." 411 U.S. at 285, 287, 93 S.Ct. at 1619. Since Congress had amended the substantive provisions of the FLSA to include state employees, but had left the jurisdictional provision unchanged, the Court found this clear language lacking, and held the state immune.

The Fourth Circuit was confronted with and rejected the argument that *Employees* had effectively overruled *Parden*. *Int'l Longshoremen's Assoc. v. North Carolina*, 511 F.2d 1007 (4th Cir.1975) *adopting as op.*, 370 F.Supp. 33 (E.D.N.C.1974). The Court analyzed *Employees* in this way:

> The Court in *Employees* distinguished *Parden* on several grounds: (1) The FLSA provided for the alternate remedy of enforcement of federal statutory rights in an action brought by the Secretary of Labor, thereby providing a remedy for wronged employees while avoiding a confrontation between state and federal sovereignties, whereas in *Parden* there was no alternate remedy; (2) The FLSA provided for recovery by employees not only of the amount of unpaid wages, but also for liquidated damages in an equal amount and for attorneys' fees whereas in *Parden*, the employees were seeking only to be made whole; and the court felt that since Congress had

created such a remedy under the FLSA, with punitive characteristics, it did not intend to subject the states to suit by its own citizens, and intended instead for "the delicate federal-state relationship to be managed through the Secretary of Labor." *Employees, supra;* (3) *Parden* involved the operation of an interstate railroad, a function normally run by private business associations, whereas *Employees* involved a hospital, a function traditionally operated by state and local governments.

> It does not appear to this court that *Employees* is controlling authority in this case.

370 F.Supp. at 38. Thus, the Fourth Circuit held that a state waives its Eleventh Amendment immunity to claims under the Railway Labor Act—which *Petty* deemed identical to the Jones Act for immunity purposes, *see supra* p. 5447—when it operates a port and railroad, even though no profit is made on the operation. *Id.*

On the distinctions drawn by *Employees* between the FLSA and FELA, the Jones Act is like FELA and unlike FLSA. The Jones Act contains no provision for administrative enforcement, but rather was specifically enacted to provide a private cause of action. Moreover, the Jones Act concerns the operation of vessels on navigable waters and in this case a ferry boat, which *Petty* described as "an industrial or business field," 359 U.S. at 280, 79 S.Ct. at 789, as contrasted with the state mental hospitals described by *Employees* as "not proprietary." 411 U.S. at 284, 93 S.Ct. at 1617. Certainly, the ferry boat operation here is more analogous to the railroad in *Parden* than to the public mental hospital in *Employees*. Congress' incorporation of FELA into the Jones Act indicates that Congress considered the operation of vessels and trains within the sphere of the national government—i.e., in interstate commerce, or on navigable waters—to be analogous in terms of safety to workers. Comment, 57 Tul.L.Rev. at 1544–45.

There was yet a third distinction from *Parden* drawn in *Employees* that supports

the application of *Parden,* and not *Employees.* *Employees* pointed out that the state railroad in *Parden* "involved a rather isolated state activity," whereas the FLSA would implicate "elevator operators, janitors, charwomen, security guards, secretaries, and the like in every office building in a State's governmental hierachy." 411 U.S. at 285, 93 S.Ct. at 1618. Thus, under FLSA, the federal intrusion in state affairs would be "pervasive." *Id.* This pervasive effect made the Court look very carefully at congressional intentions to abrogate the Amendment to such a degree. In contrast, the Jones Act could affect only a handful of maritime or amphibious state employees out of many thousands. Thus, the application of the Jones Act, like FELA, is "isolated," rather than "pervasive."

Yet the difference in the reach of FLSA and FELA or the Jones Act is not merely one of degree. *Employees* emphasized that *Parden* rested on federally imposed waiver. 411 U.S. at 282, 93 S.Ct. at 1616. But there is no possible voluntary waiver of FSLA immunity in the employment of secretaries, janitors, security guards, and the like to work in the offices in a state's governmental hierarchy. A state has no choice but to employ such workers. It would be paralyzed without them. In contrast, a state could more readily operate, govern and exist without a state-owned railroad or ferry system. Thus, a concept of effectual waiver is applicable to the state's voluntary decision to run a ferry. Therefore, this case is fully distinguishable from *Employees,* and squarely controlled by *Parden.*

The Eleventh Circuit has ruled in favor of the state on the Jones Act-Eleventh Amendment issue. In *Sullivan v. Georgia Dept. of Nat'l Resources,* 724 F.2d 1478 (11th Cir.1984), a Jones Act suit by an employee of the Georgia Department of Natural Resources who was a member of the crew of a research vessel operating on the coastal waters of Georgia was held barred by the Eleventh Amendment. However, in its quest for the "clear statement" by Congress that *Employees* and *Intracoastal* required, the *Sullivan* court either

overlooked or ignored the express incorporation of FELA into the Jones Act and also *Parden*'s finding of "clear language" in FELA's application to "every" common carrier. Moreover, the Jones Act in clear language grants the rights of injured railroad employees to "Any seaman," without drawing any distinction for state-employed seamen. *Cf. Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) ("the [Civil Rights Attorney's Fees Awards] Act could not be broader. It applies to 'any' action brought to enforce certain civil rights laws.") Thus, the result the *Sullivan* court reluctantly reached through application of the "clear expression" requirement was flawed.

Moreover, the *Sullivan* court expressed dissatisfaction with its own application of *Parden* and *Employees,* stating that it was nevertheless bound—as are we—by our decisions in *Intracoastal Transp, Inc., v. Decatur County, Georgia,* 482 F.2d 361 (5th Cir.1973) and *Freimanis v. Sea-Land Service, Inc.,* 654 F.2d 1155, 1158 (5th Cir. 1981). In *Intracoastal* we held that *Employees* had added a "clear statement" requirement to the *Parden* holding that entry by a state into a federally regulated sphere of activity subjected it to federal suit. In *Freimanis,* we merely held that the many Supreme Court decisions between 1973 and 1981 had not undermined *Intracoastal.* However, we do not read *Intracoastal* or *Freimanis* to require the upholding of Eleventh Amendment jurisdictional immunity in Jones Act suits.

*Intracoastal* and *Freimanis* did not involve the Jones Act, but rather the "Bridge Act of 1906," 33 U.S.C. § 491 *et seq.,* which establishes standards for bridges over navigable waters and the Rivers and Harbors Appropriations Act of 1899, 33 U.S.C. § 409. *See also Karpovs v. Mississippi,* 663 F.2d 640 (5th Cir.1981). *Intracoastal* did not hold *Parden* to have been overruled, but instead carefully pointed out the distinctions between *Employees* and *Parden* discussed above. The Bridge Act was controlled by *Employees* and not *Parden* because, among other things, like the

FLSA, it was penal in nature, vested enforcement in the Attorney General and was not intended as the Jones Act to confer a private right of action on the seaman.

The most glaring distinction between *Intracoastal/Freimanis* and this case is that those cases held there was no *substantive* private cause of action created under the Bridge Acts, 482 F.2d at 367; 654 F.2d at 1160. The Jones Act, to the contrary, expressly creates a private cause of action and was purposefully enacted to assure that result. Thus, *Intracoastal* and *Freimanis* are distinguishable on the substantive question and did not reach the jurisdictional question. Assuming that *Intracoastal*'s "clear statement" requirement for deciding the substantive question also applies to the jurisdictional question, that requirement is satisfied by the Jones Act.

In *Freimanis,* the Court stated "We need not here canvass in the abstract the difficult issue of just how express Congress must be before abrogation of eleventh amendment immunities is to be found." 654 F.2d at 1159. It had already been decided in *Intracoastal* that Congress had not abrogated Eleventh Amendment immunity in the Bridge Acts.

The degree of clarity of expression the Supreme Court requires in a congressional enactment in order to find Eleventh Amendment immunity to be abrogated has varied. Although the cases are not entirely reconcilable, it appears that several factors have influenced the degree of scrutiny of the congressional language in accordance with "the principles of federalism that inform the Eleventh Amendment doctrine." *Pennhurst State School & Hospital v. Halderman,* — U.S. —, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), *quoting Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978). The degree of federal intrusion into the workings of state governments that would result from finding abrogation of immunity is an important factor, as in any problem of federalism. The contrast and the extent of potential impact between FELA and the FLSA was highlighted above. This contrast brought the Court to different results in *Employees* and *Parden.* Likewise, the Court has held that in section 1983 suits, which now number like leaves on the trees, that immunity is not abrogated. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Yet in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Court found in language no more specific than the Jones Act, an abrogation of Eleventh Amendment immunity in the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. § 1988. The *Hutto* Court distinguished *Employees,* stating that the purpose of the *Employees* clear expression requirement was to insure that "Congress has not imposed 'enormous fiscal burdens on the States' without careful thought." 437 U.S. at 697 n. 27, 98 S.Ct. at 2577 n. 27. Thus, under the Jones Act, which covers a relatively small group of state employees, and which invokes the supremacy and national uniformity of federal statutory maritime law, the purpose of *Employees* would not be served by a rigorous application of the clear statement rule.

The Jones Act applies to Texas and its state-operated vessels. Ordained by the national government under its preeminent congressional admiralty-maritime powers, the application of the Jones Act is as free from the restraints of the Eleventh Amendment as is FELA's regulation of state-operated interstate railroads.

*Petty* and *Parden* are still controlling. They should control here.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

The majority opinion finds an express waiver of sovereign immunity by the State of Texas under the Texas Tort Claims Act and the Texas Workers' Compensation Act as they apply to an injured maritime employee of the State of Texas. To reach this result the opinion engages in a strained and unjustified interpretation of the statutes. I, therefore, must dissent from the conclusion that the State of Texas has waived its sovereign immunity in this case.

Briefly the argument is that in waiving sovereign immunity under the Texas Tort Claims Act, the state defines such a waiver as to state agencies carrying workers' compensation in the words of Section 19 of the Tort Claims Act that the governmental unit is entitled to the "privileges and immunities" granted by the Compensation Act. Then, the opinion concludes that since the Texas Workers' Compensation Act cannot protect private maritime employers from employees suing under the Jones Act, *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), the giving of the "privileges and immunities" of the Workers' Compensation Act to the state government units also takes away the sovereign immunities of the state government units from being sued by the government employees under the federal statute.

It is a peculiar interpretation, and to me an obvious thwarting of legislative policy, to find that granting "privileges and immunities" to a state governmental unit also includes placing upon the state units what must be called exceptions, disabilities and obligations of the Compensation Act. To see in this an express and intentional waiver of sovereign immunity by the State of Texas is a tortured interpretation contrary to any common understanding of the words.

The obvious purpose of Section 19 of the Texas Tort Claims Act is to give to the governmental unit as much protection from lawsuits by injured workers as the State of Texas gives private corporations. It is obviously not intended to go on and say that the governmental unit is subjected to additional federally imposed obligations as are private corporations. If that is what the Legislature had had in mind, it could very easily have said so. How a state grant of "privileges and immunities" to a state governmental unit can constitute an express waiver by the state of the important principle of sovereign immunity is simply beyond my comprehension. It is not the *state* that grants the Jones Act suit to injured maritime workers of private employers; it is *federal* law which controls. But if the maritime employee is a state employee, the *state* must grant the right through a waiver of sovereign immunity if there can be suit against the state under the Jones Act.

It is also of critical importance to realize that the issue of whether the state has enacted an express waiver of sovereign immunity is a matter of the interpretation of state law. If the state has spoken in interpreting its law, it is not within the authority of this Court to reinterpret that law. We have the authoritative state interpretation of these very provisions. In *Lyons v. Texas A & M University,* 545 S.W.2d 56 (Tex.Civ.App.1976), the precise issue of the case before us was decided by the Texas Court. That case involved the injury of a seaman on a vessel owned and operated by Texas A & M University, a governmental unit of Texas. Again, the Texas Workers' Compensation Act had been adopted by the University and was applicable to the injury. Lyons, however, brought suit to recover damages for unseaworthiness, maintenance and cure, and negligence under the Jones Act. The Texas Court of Civil Appeals in an opinion by Justice Cire held that the state district court had been correct in dismissing the claim, finding the Texas Workers' Compensation remedy the exclusive remedy under the Texas Tort Claims Act and the applicable Texas Workers' Compensation Statute. The Court held that Section 19 of the Texas Tort Claims Act gave the University "all the privileges and immunities granted" by the Workers' Compensation laws and made its remedy exclusive. The Supreme Court of Texas denied review, finding no reversible error. Tex.Writs of Error Table, 134 (1982).

We are bound by this interpretation of the Texas law by the Texas Court of Civil Appeals with writ of error refused. The state has interpreted these statutes as not constituting a waiver of sovereign immunity. It is significant to note that Justice Cire, who with his colleagues established this interpretation of the Texas laws as a member of the Texas Court of Civil Appeals, is now United States District Judge Cire who rendered decision in the case

which is before us. In his decision he properly gave the same interpretation. It surely strengthens the application of the state law for the district judge who applied it to have been the judge who created the authoritative state interpretation when he was a Justice of the state court. Judge Cire knew what the law of the State of Texas was with respect to express waiver. We have no authority to overrule him.

As a matter of analysis I cannot accept a magic that creates disabilities and obligations out of a grant of "privileges and immunities". But even if I am wrong in that respect, the issue is one of state law, we have the authoritative state interpretation, and the majority opinion does not follow it. Need more be said? There is no express waiver.

Since I take the position there is no express waiver, I must face the additional issue of whether there is an implied waiver by the State of Texas. Here I also think it is clear that there is not. *Parden v. Terminal R.R. Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), constitutes the high water mark of the Supreme Court finding a forced implied state waiver of sovereign immunity in Federal Employers' Liability Act and Jones Act claims. In that case the Court took the position that merely by operating an interstate railroad, a federally regulated business, the state waived its sovereign immunity.

The Supreme Court has backed away from that extreme holding as its full implications have surfaced. Thus in *Employers of the Dept. of Public Health & Welfare v. Dept. of Public Health & Welfare*, 411 U.S. 279, 286, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251 (1973), the Supreme Court modified *Parden* by holding that it is not enough to show that the state itself is operating within a federally regulated sphere. A plaintiff must also show that Congress expressly provided that the private remedy would be applicable to the states.

Relying upon *Employers,* we held in *Intracoastal Transportation, Inc. v. Decatur County, Georgia,* 482 F.2d 361 (5th Cir.1973), that the state had not impliedly waived its immunity against claims brought under the Bridge Act of 1906 simply by operating in a federal regulated sphere. "[T]he private litigant must show that Congress expressly provided that the private remedy is applicable to the states." *Id.* at 365. There is no such express provision in the Jones Act. And in *Freimanis v. Sea-Land Service, Inc.,* 654 F.2d 1155, 1160 (5th Cir.1981), we extended our decision in *Intracoastal* to find no implied waiver of sovereign immunity when the cause of action was brought under the River and Harbors Appropriation Act of 1899, 33 U.S.C. § 401.

But the Supreme Court has now gone even further in protecting the states in their own governmental activities from the regulatory intrusion by the United States. In 1974, Congress broadened the coverage of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., specifically to include "public agencies", including "the government of a state or political subdivision thereof." 29 U.S.C. § 203(d)(x). This opened the states to liability under the FLSA to its own governmental employees with enforcement of the law by the United States Government and also by private suits brought by the employees.

The Supreme Court had earlier upheld a much narrower extension of the Fair Labor Standards Act applying it to "state hospitals, institutions and schools." *Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). But after carefully considering the serious intrusion upon the ability of a state to carry out its own governmental activities when the federal government dictates state employment policies, the Supreme Court just eight years later specifically overruled *Maryland v. Wirtz.* The Court held unconstitutional Congress' intrusion of the Fair Labor Standards Act into state governmental activities. *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

We no longer find that the "plenary power" of Congress to regulate in the delegat-

ed areas of federal regulation overrides the critical importance of recognizing the states as governmental entities in a federal system. The states must be left to carry out their own governmental functions in ways which they decide are best. The Court in *Usery* concluded:

Congress may not exercise that power so as to force directly upon the states its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made. We agree that such assertions of power if unchecked, would indeed, as Mr. Justice Douglas cautioned in his dissent in *Wirtz*, allow "the National Government [to] devour the essentials of state sovereignty," 392 U.S. at 205, 88 S.Ct. at 2028, ....

It is not necessary at this time to decide if Congress has the power to force the application of the Jones Act on the various states by affording that remedy to maritime employees of the state government itself as it carries out its governmental functions. I am willing to assume for purposes of this decision that the traditionally strong policy of the federal government in dealing with maritime matters would justify such a conclusion, even though the *Usery* case can be said to raise considerable doubt. But what is of critical importance is that before that issue arises, Congress, in spite of state sovereignty considerations, must undertake specifically to force the states to be subservient to federal regulation with respect to their own employees engaging in these governmental activities. Congress has not done this. It cannot be said that there is an implied waiver by the State of Texas. There is no activity by the State of Texas which can possibly implicate a waiver. And the silence of Congress cannot be taken as driving the state into a waiver by implication.

With regard to Judge Brown's scholarly and thorough concurring opinion, I make only this one pertinent observation. The injury to Welch in this case took place in connection with the operation of a state owned ferry boat. This ferry boat was operated by the Texas Highway Department as part of its highway system. It operated in lieu of a bridge. This overriding fact removes it substantially from comparison to the railroad involved in *Parden v. Terminal Ry. of Alabama State Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). That case involved a terminal railroad serving docks. By law of the State of Alabama it was specifically a "common carrier" and was operating for profit. It is clear in *Parden* that the State had moved out of its governmental functions into commercial and proprietary activity in the operation of the railroad. In contrast, in this case, the State of Texas was operating the ferry as part of a well recognized thoroughly governmental nonprofit function—the building and maintaining of an effective highway system for its citizens. In spite of the weakening of *Parden* in later cases as described above, if *Parden* needs to be distinguished, it is easily distinguishable as a proprietary, for profit, business operation of a common carrier by the State.

I conclude, therefore, that Judge Cire was fully correct in applying the state law in interpreting the state statutes to find that there is no express waiver of sovereign immunity in a suit brought by a state maritime employee carrying out governmental functions. I further find no justification or authority for an implied waiver. Allowing the federal government to intrude upon the way a state government carries out its own governmental functions is a questionable and delicate business at best. We should not readily assume that the state has yielded its control over its own employees to the federal government nor should we readily assume that the federal government is insisting that the state, regardless of its own interest, be forced to yield its control over its own employees.

Finally, this injured employee is not left without remedy. The State of Texas entitles her to full Texas Workers' Compensation under the Texas law. Texas voluntarily has waived sovereign immunity to protect its government employees under its own law.

I dissent.

## SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS and HILL, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the applications for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.