**BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Plaintiff,**

v.

**NEW JERSEY TRANSIT RAIL OPERATIONS, INC. and Consolidated Rail Corporation, Defendants.**

**No. 84 Civ. 7104–CLB.**

United States District Court,
S.D. New York.

May 14, 1985.

Brian Brown and Harold Ross, Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for plaintiff.

David S. Fortney, Morgan, Lewis & Bockius, New York City, for Conrail.

Barbara Murphy-Warrington and Robert Stoloff, Asst. Attys. Gen., State of N.J., Trenton, N.J., for defendant New Jersey Transit Rail Operations, Inc.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

On October 2, 1984, plaintiff Brotherhood of Locomotive Engineers ("BLE") filed a complaint against New Jersey Transit Rail Operations, Inc. ("NJTRO") and Consolidated Rail Corporation ("Conrail") under the Railway Labor Act ("RLA"), 45 U.S.C. § 152, First. The complaint seeks declaratory judgment and prospective injunctive relief, to effectuate a collective bargaining agreement said to have been formed orally on March 23, 1983 between plaintiff and the defendants. Plaintiff seeks the unusual remedy under the RLA by which a designated representative can enforce "the duty upon defendants to bargain in good faith, including the duty to sign and acknowledge collective bargaining agreements" formed orally but not reduced to writing (Complaint, ¶ 14).

By notice of motion filed January 17, 1985, defendant NJTRO moves to dismiss the Complaint on the ground that the Eleventh Amendment to the United States Constitution bars this suit in the federal district court. This motion presents one very interesting legal issue: whether a state-owned rail carrier, engaged in interstate transportation of passengers, is amenable to suit in federal court by private parties seeking to enforce rights created by Congress in the exercise of its commerce clause power. For the reasons that follow, the Court answers this question in the affirmative.

The complaint alleges, and the documents cited or submitted demonstrate, that NJTRO is a public corporation of the State of New Jersey and a rail carrier of passengers whose lines extend into this District. NJTRO is a wholly owned subsidiary of New Jersey Transit Corporation, which is also a public corporation of the State of New Jersey, created by the New Jersey Public Transportation Act of 1979, as successor to the Commuter Operating Agency of the New Jersey Department of Transportation. Its purpose is to preserve and operate the essential commuter service into New York City which Conrail and its predecessor railroads had conducted for so long with such disastrous financial results. The State Legislature of New Jersey has made a legislative finding that New Jersey Transit Corporation and its subsidiaries are constituted as instrumentalities of the State exercising essential public and governmental functions of the State. This is said to be so notwithstanding that it sets its own tariffs for transportation services and it receives, deposits and expends its own funds in furtherance of its corporate objectives. N.J.S.A. § 27:25–5(n), (o), (p). Also NJTRO is independent of any supervision or control by any other department of the Executive Branch of the State of New Jersey. *Id.* at 25–4(a).

■ In its effort to maintain federal court jurisdiction, plaintiff argues that NJTRO is not an arm of the State, or the State's "alter ego", for Eleventh Amendment purposes. We disagree. Under similar facts, the United States District Court for the District of New Jersey already has determined that New Jersey Transit Corporation is the alter ego of the State for diversity purposes. *Gibson-Homans Co. v.*

*New Jersey Transit Corp.*, 560 F.Supp. 110, 113 (D.N.J.1982). In that decision the Court pointed out that although the State has purportedly disclaimed liability for any debts or liabilities of the corporation, N.J.S.A. § 27:25–17, the same statute prohibits the corporation from incurring a deficit or from raising money through the sale of its own bonds. Similarly, all property of New Jersey Transit is deemed by statute to be state property. *Id.* at § 27:25–16. The *Gibson-Homans* Court found that these facts necessarily require that state funds flow freely into the coffers of New Jersey Transit as needed to prevent a deficit. "This substantial and continuing contribution of state money to New Jersey Transit's budget is a sufficiently direct effect on the state Treasury to support a finding that New Jersey Transit is the alter ego of New Jersey. *Fitzpatrick v. Bitzer*, 519 F.2d 559, 564–65 (2d Cir.1975), *rev'd on other grounds*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)." *Gibson-Homans*, 560 F.Supp. at 114. The District Court in New Jersey considered the alter ego issue solely for purposes of determining diversity jurisdiction. However, it relied in part on *Fitzpatrick* which presented an Eleventh Amendment question and was decided by our Court of Appeals. Under the *Fitzpatrick* standard, this Court finds that NJTRO is also the alter ego of the State for purposes of determining immunity under the Eleventh Amendment. However, since, we find that in any event, NJTRO is not immune from suit in this Court, the "alter ego" issue is not dispositive of the within motion.

■ The real question presented by this motion involves the constitutional power of Congress to regulate this sphere of industry. It appears that NJTRO does not dispute the contention that the Federal Railway Labor Act applies to the commuter services operated by NJTRO. Nor has NJTRO raised a defense based upon the Tenth Amendment. (Brief in Support of Defendant's Motion, p. 7). This concession is entirely proper in view of the United States Supreme Court's decisions that the RLA confers rights on employees of state-owned railroads, *California v. Taylor*, 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957), and that a state-owned commuter railroad is not immune from the requirements of the RLA, *United Transportation Union v. Long Island R. Co.*, 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982). Furthermore, this concession is necessary under the mandate of the New Jersey Legislature, e.g. N.J.S.A. § 27:25–14(e) ("[Labor relationships] may be changed only in accordance with the principles established under the 'Labor Management Relations Act, 1947' and the 'Railway Labor Act' ").

Having established that the federal statute applies to NJTRO's operations and controls its relationships with its locomotive engineers, we turn to the specific question of whether plaintiff can enforce its rights granted by Congress in the RLA in federal court, or whether it should be required to litigate in the state courts of New Jersey.

The Supreme Court authority most relevant to our discussion is *Parden v. Terminal Railway*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). In that case, plaintiff sought damages under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, for injuries sustained while employed by a state-owned railway. The Supreme Court reversed an order dismissing on the ground that the railway was an agency of the State and the State had not waived its immunity from suit, holding that the immunity doctrine as embodied in the Eleventh Amendment is no bar to federal court jurisdiction in a FELA action, because Congress enacted the FELA in the valid exercise of its power to regulate interstate commerce.

"By empowering Congress to regulate commerce, then, the States necessarily surrendered any portion of their sovereignty that would stand in the way of such regulation. Since imposition of the FELA right of action upon interstate railroads is within the congressional regulatory power, it must follow that application of the Act to such a railroad can-

not be precluded by sovereign immunity."

*Id.* at 192, 84 S.Ct. at 1212–13 (footnote omitted). Quoting from its previous decision in *United States v. California*, 297 U.S. 175, 184–85, 56 S.Ct. 421, 424–25, 80 L.Ed. 567 (1936), the *Parden* Court reminded us that:

"a State's operation of a railroad in interstate commerce must be in subordination to the power to regulate interstate commerce, which has been granted specifically to the national government. The sovereign power of the states is necessarily diminished to the extent of the grants of power to the federal government in the Constitution.... [T]here is no such limitation upon the plenary power to regulate commerce [as there is upon the federal power to tax state instrumentalities]. The state can no more deny the power if its exercise has been authorized by Congress than can an individual." 377 U.S. at 191–92, 84 S.Ct. at 1212–13.

■ As in FELA actions, the federal courts have original jurisdiction over RLA suits. Unlike the FELA, Section 152, First of the RLA does not contain an express statutory grant of jurisdiction. However, it is well settled that the federal district courts are authorized to grant injunctive and declaratory relief when railway employees challenge the legality of labor practices under the RLA. *Chicago and N.W.R. Co. v. United Transportation Union*, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971); *O'Connell v. Erie Lackawanna R. Co.*, 268 F.Supp. 397, 399 (S.D.N.Y.1967). Subject matter jurisdiction is founded upon 28 U.S.C. § 1337 and the federal act, which has the stated purpose of avoiding "any interruption to [interstate] commerce or to the operation of any carrier engaged therein." 45 U.S.C. § 151a. As in the FELA, the RLA contains no statutory language in limitation of its jurisdictional coverage. *See Parden*, 377 U.S. at 189, 84 S.Ct. at 1211 ("The language of the FELA is at least as broad and all-embracing as that of the Safety Appliance Act or the Railway Labor Act, and its purpose is no less appli-

cable to state railroads and their employees"). Furthermore, despite defendant NJTRO's contention that BLE can bring its suit in New Jersey state court, concurrent jurisdiction merely provides an alternative forum and should not be read as a limit on the authority of the federal district courts. *Parden*, 377 U.S. at 190 n. 8, 84 S.Ct. at 1212 n. 8. If *Parden* were the only relevant precedent, this Court would be persuaded that the similarities between the RLA and the FELA compel the same result here as in *Parden*. However, in *Employees v. Missouri Public Health and Welfare Dept.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), the Supreme Court distinguished *Parden*.

In *Employees*, employees of state hospitals and training schools sued for overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The Court held that the Eleventh Amendment *did* bar plaintiffs' suit in federal court, and that Congress did not intend to authorize federal court jurisdiction over FLSA suits by state hospital employees. *Id.* at 285, 93 S.Ct. at 1618. Significantly, the Court reasoned that *Parden* had involved employees of a railroad transportation business which the State had operated for profit, as a traditionally private or "proprietary" function, rather than a governmental function. In contrast, state hospitals are not regarded as proprietary, and for that reason the Court was reluctant to extend the *Parden* rule to cover FLSA actions: It held:

"Where employees in state institutions not conducted for profit have such a relation to interstate commerce that national policy, of which Congress is the keeper, indicates that their status should be raised, Congress can act. And when Congress does act, it may place new or even enormous fiscal burdens on the States. Congress, acting responsibly, would not be presumed to take such action silently. The dramatic circumstances of the *Parden* case, which involved a rather isolated state activity can be put to one side. We deal here with problems that may well implicate elevator opera-

tors, janitors, charwomen, security guards, secretaries, and the like in every office building in a State's governmental hierarchy." 411 U.S. at 284–85, 93 S.Ct. at 1617–18.

In its conclusion, the Court stated that the issue of amenability to suit should turn on the existence of a clear Congressional intent to abrogate the State's Eleventh Amendment immunity:

"It is true that, as the Court said in Parden, 'the States surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce.' 377 U.S., at 191 [84 S.Ct. at 1212]. But we decline to extend *Parden* to cover every exercise by Congress of its commerce power, where the purpose of Congress to give force to the Supremacy Clause by lifting the sovereignty of the States and putting the States on the same footing as other employers is not clear." 411 U.S. at 286–87, 93 S.Ct. at 1618–19.

The analysis in these two cases weaves together two distinct threads. Portions of the opinions concern the question of whether the States *surrendered* the protection of sovereign immunity in federal court suits when the States formed the Constitution with its commerce clause which must be read with the Eleventh Amendment. Other portions of the opinions, especially the majority opinion in *Employees,* refer to the different question of whether the States only *subject* themselves to instances of Congressional control, in that a State decision to operate a regulated interstate enterprise such as a railroad, may be read as a waiver of immunity, and that Congress must express its intent to condition the operation of the regulated enterprise upon the State's amenability to suit in the federal courts in its capacity as such an operator. If, as we believe, an affirmative answer to the first question was the majority's premise in *Parden,* there is no reason to look for explicit Congressional intent to disallow immunity. *Employees,* 411 U.S. 298, 300, 93 S.Ct. at 1626. (Brennan, J., dissenting); *contra id.* at 294–95 n. 10, 96

S.Ct. at 1623 n. 10 (Marshall, J. concurring); *See generally, Note, The Eleventh Amendment and Federally Protected Rights,* 27 Buffalo L.Rev. 57, 83–85 (1978). Nevertheless, later cases have construed *Parden* as resting on a principle of constructive waiver of immunity, or implied consent to suit. *Employees, supra; Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Welch v. State Dep't. of Highways and Public Transportation,* 739 F.2d 1034, 1039–40 (5th Cir. 1984).

In 1974 Congress amended the FLSA so as to overrule the specific result reached in *Employees.* The amendments authorize state employees to sue their employer for money damages under the FLSA in "any Federal or State court of competent jurisdiction...." 29 U.S.C. § 216(b) (Supp. 1985). The statute had previously authorized suit in "any court of competent jurisdiction" and the *Employees* decision had rendered the federal district court incompetent. Although Congress changed the result, the *Employees* rationale and its requirement that Congress must express its intent to abrogate Eleventh Amendment protection were cited with approval in the Supreme Court's most recent Eleventh Amendment case, *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). There the Court stated that "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." (Emphasis in original). *Pennhurst* concluded that the Eleventh Amendment prevents a State's alter ego from being sued in federal court where the suit is based upon a state law claim.

■ In the case at bar, BLE's suit is based not on state law, but on an Act of Congress which is one part of the extensive federal regulation of interstate commerce and labor relations. It must be apparent to NJTRO that its interstate rail enterprise carries with it the possibility of exposure to a RLA suit in the federal courts. The Railway Labor Act was enacted originally in 1926. As earlier noted the New Jersey

Legislature was aware of the applicable RLA rights and remedies when it expressly provided that changes in bargaining relationships are to be made "only in accordance with the principles [of the] Railway Labor Act." N.J.S.A. § 27:25–14(e). In view of the substantial federal regulation in the area of interstate rail service, and in view of the substantial federal rights which the RLA confers on railway employees, we cannot find that Congress intended to disallow RLA suits in the federal courts.

In a case essentially identical to ours, the Court of Appeals for the Fourth Circuit affirmed the district court's opinion that a state port authority was not immune under the Eleventh Amendment from a RLA suit in federal court. *International Longshoremen's Ass'n. v. North Carolina State Port Authority*, 370 F.Supp. 33 (E.D. N.C.1974), *aff'd*, 511 F.2d 1007 (4th Cir. 1975). Both the district court and the court of appeals distinguished the case from the decision in *Employees*, finding that *Parden* governed the precise issue tendered for resolution—whether the port authority had subjected itself to suit in federal court by knowingly entering into the operation of an interstate railroad. Because *Employees* has since been altered by Congress, and need not be distinguished today as it was in *North Carolina Port Authority*, there is more reason than before to find that employees can bring RLA suits in federal court.

Furthermore, to the extent that Eleventh Amendment immunity is deemed waived due to the reach of Congress' commerce clause powers, the Supreme Court's recent decision to overrule *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) and to extend Congress' regulatory power over commerce, is supportive of BLE's argument in favor of jurisdiction. *Garcia v. San Antonio Metropolitan Transit Authority*, —— U.S. ——, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

The concept underlying *Parden* depended upon the authority of Congress under its Article I powers to regulate interstate commerce. Cases following *Parden* have explained that "as part of a federal regulatory scheme, Congress can condition a state's participation in federal programs or federally regulated activities on the states' consenting to be sued in federal court. In such cases, waiver of a state's Eleventh Amendment immunity is implied from the fact of participation in the federally regulated activity with knowledge that such participation will be taken as consent to be sued in federal court." *Carey v. White*, 407 F.Supp. 121, 123 (D.Del.1976). Thus, when Congress can constitutionally subject a state to liability, and the suit against the state arises under that federal law, the plaintiff's choice of a federal forum is not easily defeated by the state's claim of Eleventh Amendment immunity. The issue of *immunity from RLA regulation* has already been decided in *Long Island R. Co.*, *supra*. To the extent that the powers or immunities reserved to states under the Tenth Amendment and the Eleventh Amendment are subordinate to the Article I powers of Congress, the separate issue of *immunity from a federal forum* also is decided in favor of the federal judicial power. Thus the *Garcia* Court's decision to expand the reach of the commerce clause power supports a finding that this Court has authority to adjudicate this action against NJTRO.

In *Garcia*, the Court held that the local, publicly owned mass transit system in San Antonio, Texas was not immune, under the Tenth Amendment, from the overtime and minimum wage requirements of the FLSA. The Court found nothing in these regulations, as applied to a local transit system, "that is destructive of state sovereignty or violative of any constitutional provision." —— U.S. ——, 105 S.Ct. at 1006. In reaching this decision, the Court discarded the time honored test of distinguishing between "governmental" and "proprietary" functions, a judicial balancing effort previously considered useful for determining State immunity. In place of this former test, and the resulting "discrete limitations on the objects of federal authority," *Id.* at ——, 105 S.Ct. at 1018, the Supreme Court in-

vented a novel interpretation of the Constitution which shifts the protection of State sovereignty from judicial control based on the proprietary or governmental character of what is being regulated, to recourse only to the workings of the federal political process. *Id.* Four dissenting Justices in *Garcia* stated that the result of this new interpretation of federalism will be "that federal political officials, invoking the Commerce Clause, are the sole judges of the limits of their own Power." *Id.* at ——, 105 S.Ct. at 1026 (Powell, J. dissenting).

This Court concludes that the Eleventh Amendment is not a bar to a federal RLA suit against a state employer. The motion by NJTRO is controlled by *Parden, supra,* and by *United Transportation Union v. Long Island R. Co.,* 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982), which latter case is consistent with *Garcia's* view of state immunity under the Tenth Amendment. In *Long Island,* without consideration of the Eleventh Amendment issue, the Supreme Court decided that the Tenth Amendment does not render a state-owned railroad engaged in interstate commerce immune from the provisions of the Railway Labor Act. The *Long Island* appeal was taken from a ruling by the lower *federal* court, and the *Long Island* Court remanded the case to the *federal* court of appeals.

Defendant's motion to dismiss the complaint is denied. Counsel for the parties are directed to appear on May 29, 1985 at 9:30 A.M. in Courtroom 705 for a status and scheduling conference.

So Ordered.